**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3759-15T1

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

    Plaintiff-Respondent,

v.

B.H.,

    Defendant-Appellant.
_____

IN THE MATTER OF T.H. and B.H.,

    Minors.
_____

Submitted October 17, 2017 — Decided October 27, 2017

Before Judges Reisner and Hoffman.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Essex County,
Docket No. FN-07-0462-14.

Joseph E. Krakora, Public Defender, attorney
for appellant (Beth Anne Hahn, Designated
Counsel, on the briefs).

Christopher S. Porrino, Attorney General,
attorney for respondent (Andrea M. Silkowitz,
Assistant Attorney General, of counsel;
Natalie Behm, Deputy Attorney General, on the
Brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for the minors (Charles Ouslander, Designated Counsel, on the brief).

PER CURIAM

Defendant appeals from the July 7, 2014 Family Part order determining she abused or neglected her daughter, Tracey[1], within the meaning of N.J.S.A. 9:6-8.21(c). Defendant argues this finding should be vacated as not supported by a preponderance of the evidence and her name should be removed from the Central Registry, N.J.S.A. 9:6-8.11. After reviewing the record in light of the contentions raised on appeal, we affirm.

## I.

Defendant is the mother of Tracey, as well as two older daughters who lived with defendant and Tracey at the time of the incidents leading to the order under review. The whereabouts of Tracey's biological father were unknown at the time. Tracey has a history of behavioral issues and running away.

In February 2014, Tracey, who was fourteen years old, ran away from home and was missing for six days. On February 19, 2014, Tracey was found at school and taken to the hospital for a psychological evaluation. On February 24, the hospital determined Tracey was ready for discharge, but the hospital could not get in

---

[1] We refer to T.H. by a pseudonym for anonymity and ease of reference.

touch with defendant, so it called the Division of Child Protection and Permanency (Division). Defendant had no contact with the hospital during Tracey's stay; however, she later claimed that her boyfriend talked to hospital staff on her behalf. Defendant failed to visit Tracey during her eight-day stay in the hospital.

On February 26, defendant met with Division workers for two hours. Defendant flatly refused to pick up Tracey from the hospital and bring her home. Defendant stated Tracey would just run away again if defendant brought her home, and said she was safer at the hospital than on the streets. Defendant also felt Tracey needed residential care rather than in-home services. The Division offered in-home services for Tracey at that meeting and defendant refused those services. Defendant also failed to cooperate with the Division's request that she provide the names of family or friends who may have been willing to care for Tracey, insisting that "no one will be willing to take her in."

When the hospital discharged Tracey, it recommended "an after school program for continued therapy and medication management." The hospital discharge summary stated Tracey "was awake, alert, . . . pleasant and cooperative to interview." The discharge summary also stated Tracey "denied thoughts to harm herself or others . . . ."

A-3759-15T1

On February 27, the Division obtained emergency custody of Tracey and placed her in a foster home. The Division also substantiated defendant for neglect and inadequate supervision. On March 4, 2014, the Division brought an order to show cause for emergency custody of Tracy, which the court granted.

At a July 7, 2014 fact finding hearing, the court found defendant refused in-home services for Tracey, refused to care for Tracey, refused to find relatives to care for Tracey, and refused to even visit with Tracey when she was in the hospital. In finding "abuse and neglect," the court reasoned defendant had a responsibility to care for Tracey once the hospital released her, and defendant failed to do so.

The Division eventually placed Tracey in residential treatment. Her biological father was located and began therapeutic visits with Tracey. When the court terminated litigation in March 2016, Tracey lived with her biological father, who had physical custody.

This appeal followed, with defendant arguing the trial court erred in finding that she abused and neglected her daughter through negligent supervision and abandonment, and that a finding of abuse and neglect is contrary to public policy.

A-3759-15T1

At a fact finding hearing, the judge must determine whether a child has been abused or neglected. N.J.S.A. 9:6-8.44. Our scope of review is limited. "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)). Deference is appropriate because trial judges have the opportunity to see and hear the witnesses and evaluate the credibility and weight to be afforded their testimony. Id. at 412 (citing Pascale v. Pascale, 113 N.J. 20, 33 (1988)). Deference to family court fact finding is particularly appropriate because of the family court's special jurisdiction and expertise in family matters. Id. at 413. We do not interfere unless the trial judge's findings are "so wide of the mark that the judge was clearly mistaken." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188-89 (App. Div. 1993)).

Abuse cases are fact sensitive and are examined on a case-by-case basis. N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011). The standard for a finding of abuse or neglect is by a preponderance of the evidence. N.J.S.A. 9:6-8.46(b)(1).

N.J.S.A. 9:6-8.21(c)(4) states, an "[a]bused or neglected child" is "a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . ." That phrase "refers to conduct that is grossly or wantonly negligent, but not necessarily intentional." G.S. v. N.J. Div. of Youth & Family Servs., 157 N.J. 161, 178 (1999). A parent or guardian "fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181.

Under N.J.S.A. 9:6-8.21(c)(5), an "[a]bused or neglected child" is also "a child who has been willfully abandoned by his parent or guardian . . . ." Abandonment is elsewhere defined:

> Abandonment of a child shall consist in any of the following acts by anyone having the custody or control of the child: (a) willfully forsaking a child; (b) failing to care for and keep the control and custody of a child so that the child shall be exposed to physical or moral risk without proper and sufficient protection; (c) failing to care for and keep the control and custody of a child so that the child shall be liable to be supported and maintained at the expense of the public, or by child caring societies or private persons not legally chargeable with its or their care, custody and control.

[N.J.S.A. 9:6-1.]

"Abandonment requires a finding that parents, although physically and financially able to care for their children, willfully forsook their parental responsibilities. The concept of abandonment entails a willful surrender or intentional abdication of parental rights and duties." In re Guardianship of K.L.F., 129 N.J. 32, 39 (1992) (citations omitted). "The word 'willfully' in the context of this statute means intentionally or purposely as distinguished from inadvertently or accidentally." State v. Burden, 126 N.J. Super. 424, 427 (App. Div.), certif. denied, 65 N.J. 282 (1974).

Here, the record contains substantial, credible evidence to support a finding of abuse and neglect under both N.J.S.A. 9:6-8.21(c)(4) and (5). Not only did defendant fail to "exercise a minimum degree of care," she clearly and explicitly refused to care for her child at all. First, she refused to visit Tracey in the hospital, and then she refused to pick up Tracey at the hospital for three days, after the hospital cleared her for discharge. She also failed to cooperate with Division or hospital workers who attempted to contact her. Defendant, in effect, "abandoned" her daughter, leaving her at the hospital and forcing the Division to assume care, custody and control. See N.J.S.A. 9:6-1. The Family Part judge correctly found a parent is not

allowed to abandon a child merely because that child is difficult to control or has mental health issues, since neither circumstance mitigates the fundamental responsibility of a parent to provide care for his or her child. But for the Division's intervention, defendant left Tracey without a safe and secure place to stay, thereby exposing the child to an actual and imminent risk of harm. In essence, defendant "willfully forsook [her] parental responsibilities." In re Guardianship of K.L.F., supra, 129 N.J. at 39.

Defendant's appellate arguments lack sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION